UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BDC LODI III L.P., a California limited partnership,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GAMESTOP, INC., a Minnesota corporation,<br><br>　　　　　Defendant.<br><br>GAMESTOP, INC.,<br><br>　　　　　Counterclaimant,<br><br>　　v.<br><br>BDC LODI III L.P.,<br><br>　　　　　Counterdefendant. | No. 2:16-cv-02373-KJM-CKD<br><br><u>ORDER</u> |

　　　　Plaintiff has sued defendant for breach of contract and a declaration that defendant breached a 2005 lease agreement by, among other things, failing to pay rent due. Defendant contends it properly exercised a right to terminate the lease; plaintiff disputes this contention. Defendant moves for summary judgment on all claims. The court heard oral argument on the

motion on December 8, 2017.  ECF No. 30.  For the reasons below, the court GRANTS defendant's motion for summary judgment on all claims.

I. BACKGROUND

    A. Factual Background

The court relies on the parties' submission of undisputed facts, submission of disputed facts and responses to opposing party submissions.  Defendant's Statement of Undisputed Material Facts (UMF), ECF No. 26-1; Plaintiff's Response to defendant's Statement of Undisputed Material Facts (RUMF) ECF No. 27-1; Plaintiff's Statement of Disputed Material Facts (DMF), ECF No. 27-2; Defendant's Response to Plaintiff's Statement of Disputed Material Facts (RDMF), ECF No. 28-1.  Unless otherwise noted, the facts below are undisputed.  *Compare* UMF, *with* RUMF.

Defendant GameStop, Inc. entered into a written lease agreement with Browman Development Company, Inc., agreeing to lease retail space in a shopping center that was not yet developed.  UMF 1.  Government entitlements, including discretionary City permits and approvals, were required before constructing the shopping center that would contain GameStop's proposed retail space.  UMF 6-7.  The two parties executed the lease, which they had negotiated and jointly drafted, in 2005.  UMF 3-4.  Browman later assigned the lease to plaintiff BDC Lodi III L.P. (BDC), effective December 27, 2006.  UMF 5.

Browman and GameStop anticipated that Browman would obtain government entitlements for the shopping center within eighteen months of GameStop's execution of the lease on January 5, 2005, and no later than June 1, 2006.  UMF 11-12.  After obtaining the government entitlements, the landlord (Browman, then BDC) expected GameStop's retail space would take approximately four or five months to build out.  UMF 13.  The parties anticipated delivering the retail space to GameStop within six months of obtaining the government entitlements.  UMF 14.  The parties' expectations were undone when BDC incurred delays in construction while attempting to obtain government entitlements.  UMF 16.

Section 2.04 of the lease agreement titled "FAILURE TO COMPLETE" describes the parties' anticipated timelines as follows:

2

> Tenant shall have a one time right to cancel this Lease on the terms specifically set forth in this Section 2.04. Said right to cancel the Lease, shall be exercisable by Tenant only if, a). Landlord has not received its governmental entitlements for the development of the Shopping Center on or before June 1, 2006, or b). Landlord is unable to deliver the Premises to Tenant on or before September 30, 2006 ("Termination Right"). Notwithstanding the above, If Landlord estimates it will be unable to deliver the Premises to Tenant on or before September 30, 2006, Landlord will provide written notice to Tenant on or before June 1, 2006, indicating its inability to deliver the Premises on September 30, 2006 ("Landlord Notice"). Tenant will have until June 30, 2006 to provide written notice to Landlord exercising its Termination Right with respect to a). above and no later than thirty (30) days from receipt of Landlord Notice to provide written notice to Landlord exercising its Termination Right with respect to b). above, hereinafter ("Termination Notice"). With respect to both condition a). and condition b)., if Landlord does not receive Tenant's Termination Notice during the time periods referenced in the immediately preceding sentence, Tenant shall be deemed to waive its Termination Right and the Lease will continue and remain in full force and effect.

Lease Agreement, ECF No. 26-3 at 7; *see also* UMF 19.

Browman never provided the "Landlord Notice" specified in section 2.04(b). UMF 21. On March 10, 2008, GameStop emailed BDC to inquire about the status of the shopping center construction and its retail space. BDC did not respond. UMF 24. On March 20, 2008, GameStop again emailed BDC requesting the same information as to the status of construction; again, BDC did not respond. UMF 25.

GameStop renewed its inquiry in a June 1, 2009 email to BDC. UMF 26. This time, BDC responded, indicating that the estimated delivery date of the retail space to GameStop was now September 2010. UMF 27. The BDC email indicated that BDC still required approval from the courts to obtain its entitlements, which would take an additional six months. UMF 28; *see also* Mijanovic Decl. Ex. B, ECF No. 26-4 at 92-94 (email exchange between BDC and GameStop attaching article reporting "[t]he council's approval won't allow Browman Development to build the center right away" because "[f]inal discretion lies with San Joaquin County Superior Court due to a lawsuit filed in 2005 by Lodi First, an anti-Wal-Mart group"; court had ruled "that environmental studies were not adequate"). BDC also informed GameStop that BDC lacked the design drawings and address for the retail space. UMF 29.

It is undisputed that as of June 2, 2009, BDC still had not delivered the retail space to GameStop. UMF 30. On June 2, 2009, GameStop sent BDC written notice to terminate the Lease Agreement. UMF 31. The letter stated, "We are exercising our right to terminate this lease, per the Landlords [sic] Failure to Deliver. This will be effective immediately and please consider this letter the notice to do so." UMF 32. BDC acknowledged receipt of this letter. UMF 31. After receiving the letter, BDC offered GameStop alternative retail spaces at properties other than the delayed shopping center, as explained below. UMF 33.

The parties both refer to emails between GameStop and BDC after GameStop sent the termination letter. *See* ECF No. 26-4 at 88-95; RUMF 34 (BDC objecting to UMF 34 but relying on pages 88-95 of Mijanovic Decl. Ex. B, ECF No. 26-4, to support its objections); RDMF 1-2 (objecting to relevance of some portions of these emails but not to their contents).[1] On June 25, 2009, BDC offered GameStop "a space in front of Target," but GameStop instead asked "what happened with the [originally agreed on] SWM [Super WalMart] project" and stated that the newly proposed Target site "doesn't look like something we can move forward with." ECF No. 26-4 at 95. BDC stated that it proposed "the other location in front of Target . . . because we received a termination notice for the Gamestop [sic] lease in the new center." *Id.* at 92. At one point on June 29, 2009, GameStop did ask about BDC's building "small shops in the SWM project, as indicated on the site plan which was attached to the Lease Agreement." *Id.* After this series of emails, GameStop wrote in an email dated July 9, 2009:

> [W]e would like to wait for the SWM project but we do need to update the Lease Agreement….. [sic] it was executed back in November of 2004. Legal will get comments to you shortly. We will still need to have a failure to deliver date, just in case the SWM project doesn't happen.

*Id.* at 89.

In another email between GameStop and BDC that same day, GameStop stated, "This lease is very old and we have an updated notice address, insurance, etc…., [sic] which will need to be amended….. [sic] We will send an amendment updating what we need." *Id.*

---

[1] The court relies on evidence only where it overrules objections.

4

Subsequent communications reflect BDC's offering an alternative "existing Wal-Mart center" location "until the Super Walmart opens" and GameStop responding that they would rather "just wait." *Id.* at 88 (emails from November 16, 2009).

BDC did not communicate again orally or in writing with GameStop until February 2015, more than five years later, stating by email that BDC anticipated delivery of the new retail space to GameStop on approximately October 1, 2015. UMF 37-38. James Stephens, Vice President for BDC, avers a phone call took place on February 3, 2015, between him and Marc Summey, a Senior Vice President for GameStop. ECF No. 26-15 at 2. According to Stephens, he informed Summey that BDC "had obtained all necessary governmental approvals and entitlements and had begun construction of the shopping center . . . ." *Id*. Summey "indicated that he understood the information" and "did not dispute that Gamestop [sic] leased a store in the Lodi Shopping Center or assert that GameStop's lease had been terminated during the conversation." *Id*. In a later email exchange on October 2, 2015, one day after the most recent estimated delivery date of October 1, Summey stated, "We will not be proceeding . . . [sic] this deal is long forgotten." *Id.* at 4. GameStop has not disputed the contents of Stephens's declaration. *See* Mot. at 17-18, ECF No. 26.

BDC did not respond immediately but mailed a letter several months later, in February 2016, stating, "Pursuant to Section 2.02 of the Shopping Center Lease dated November 29, 2004 between BDC Lodi III L.P. ('Landlord'), and GameStop, Inc. ('Tenant'), this letter shall serve as written notice of Landlord's substantial completion of the Premises and delivery of possession to Tenant effective March 14, 2016." UMF 40; ECF No. 26-14 at 2.

BDC has submitted a letter from GameStop dated March 3, 2016, as part of BDC's opposition to this motion. ECF No. 27-4. There, GameStop wrote that it had "exercised its right to terminate the Lease" on June 2, 2009 by letter; BDC wrote in a letter dated June 16, 2009, that GameStop "had 'forfeited' its right to terminate;" and GameStop rejected BDC's assertions "and reiterated its termination of the Lease" in a letter dated June 17, 2009. *Id.* at 2. At hearing, the court confirmed neither party disputes that the correspondence referenced in GameStop's March 3, 2016 letter was exchanged and stated what the letter says the correspondence contained,

ameliorating any concerns about the veracity of the June 17, 2009 letter in which GameStop rejected BDC's assertions and reiterated termination of the lease, a letter that is not included in the summary judgment record.

B. Procedural Background

BDC filed a complaint, alleging breach of contract by GameStop for failure to pay rent due under the Lease Agreement and requesting a declaration that GameStop has breached the Lease Agreement, thereby permitting BDC to sign a new lease agreement with a new tenant. Compl. ¶¶ 24-33, ECF No. 1. GameStop filed an Answer and a Counterclaim, requesting declaratory judgment concerning rights and duties under the Lease Agreement. Answer ¶¶ 63-65, ECF No. 6. The parties have engaged in discovery, *see, e.g.*, ECF Nos. 15-19, 24-25 (detailing discovery disputes and their resolution), and the deadline for non-expert discovery has long passed, ECF No. 22 at 2. GameStop moves for summary judgment on all claims. Mot. at 1-2, 20, ECF No. 26. BDC opposes this motion. Opp'n, ECF No. 27. GameStop filed its reply. Reply at 10, ECF No. 28. The court resolves the motion below.

II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular

---

[2] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

6

parts of materials in the record . . . ; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*,

7

477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

III. DISCUSSION

GameStop contends it is entitled to summary judgment because GameStop terminated the lease under a termination right granted by section 2.04 of the Lease Agreement. Mot. at 1, 3-5. BDC contends the deadline for GameStop to have exercised this right passed, and questions of fact remain about GameStop's waiver of this right. Opp'n at 3-5. Both parties dispute the relevance of communications between BDC and GameStop after GameStop communicated its termination of the Lease Agreement. Mot. at 10-11, 14-19; Opp'n at 5-7.

To prevail on a breach of contract claim, a plaintiff must prove (1) the existence of a contract, (2) the plaintiff's performance of her obligations under the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff. *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014). If GameStop properly exercised the termination right granted by section 2.04, then BDC cannot show that GameStop breached the contract. As explained below, no reasonable factfinder could conclude that GameStop failed to exercise its termination right, or that GameStop waived its termination right.

A. California Contract Law and Extrinsic Evidence

BDC offers evidence of post-termination communications between BDC and GameStop, contending "these communications create a question of fact as to whether the Lease was properly terminated to begin with," and GameStop "accepted BDC's contention that GameStop's purported termination was invalid under the Lease." Opp'n at 5-6.

1. The Parol Evidence Rule

Normally a contract's written terms alone control its interpretation: "when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to

8

the terms of the writing." *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (2013) (citing Cal. Code Civ. Proc. § 1856 and Cal. Civ. Code § 1625). This rule, commonly called the parol evidence rule, is a rule of substantive law, not of procedure. *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004). "It is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement." *Riverisland*, 55 Cal. 4th at 1174. Because a contract's "written terms supersede statements made during the negotiations," evidence other than those written terms is "irrelevant, and cannot be relied upon." *Id.* (emphasis omitted).

The parol evidence rule applies only to "an integrated written agreement." *Id.* A written agreement is "integrated" or is an "integration" if it is "a complete and final embodiment of the terms of an agreement," *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968); *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1434 (1992), or in other words, if it is "intended by the parties as a final expression of their agreement," Cal. Code Civ. Proc. § 1856(a). No party disputes the Lease Agreement, which contains an integration clause at section 16.11, is an integrated written agreement. *See* ECF No. 26-3 at 29. Thus, the parol evidence rule applies, and the court looks to the language of the integrated written agreement.

2. <u>Extrinsic Evidence and Integrated Written Agreements</u>

Despite the parol evidence rule's application here, California contract law allows admission of extrinsic evidence "to resolve an ambiguity," even when the contract is an integrated agreement. *WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996); *see also* Cal. Code Civ. Proc § 1856(g); *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). Extrinsic evidence may be offered both to explain an obviously ambiguous term and to reveal a latent ambiguity. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968); *Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 920 (2008).

But "[a]n agreement is not ambiguous merely because the parties (or judges) disagree about its meaning." *Abers v. Rounsavell*, 189 Cal. App. 4th 348, 356 (2010). Rather, the determination of ambiguity involves two steps. "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine

9

'ambiguity,' *i.e.*, whether the language is 'reasonably susceptible' to the interpretation urged by a party." *Winet*, 4 Cal. App. 4th at 1165. If the contract is not "'reasonably susceptible' to the interpretation urged," then "the case is over." *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 847-48 (1995). On the other hand, "[i]f in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *Winet*, 4 Cal. App. 4th at 1165. The court addresses BDC's offer of extrinsic evidence where relevant below.

B. <u>Right to Terminate Under Section 2.04</u>

To review, section 2.04 of the Lease Agreement states, in relevant part:

> Tenant shall have a one time right to cancel this Lease on the terms specifically set forth in this Section 2.04. Said right to cancel the Lease, shall be exercisable by Tenant only if, a). Landlord has not received its governmental entitlements for the development of the Shopping Center on or before June 1, 2006, or b). Landlord is unable to deliver the Premises to Tenant on or before September 30, 2006 ("Termination Right"). Notwithstanding the above, If [sic] Landlord estimates it will be unable to deliver the Premises to Tenant on or before September 30, 2006, Landlord will provide written notice to Tenant on or before June 1, 2006, indicating its inability to deliver the Premises on September 30, 2006 ("Landlord Notice").

UMF 19; ECF No. 26-3 at 7 (Lease Agreement at 6).

BDC asserts that "one time right" "clearly means, 'whichever comes first.'" Opp'n at 3. Otherwise, "one time right" would have "no meaning in the Lease." *Id*. BDC claims GameStop's reading of this right, that one of two independent circumstances can trigger it, ignores the requirement under California law to "give effect to every part" of a contract. Cal. Civ. Code § 1641. But BDC's own interpretation ignores the rest of section 2.04, which provides two separate deadlines for GameStop to exercise the termination right, demarcated by (a) and (b) in the language of section 2.04 of the Lease. The first deadline for GameStop to exercise its Termination Right is June 30, 2006, if BDC failed to meet the June 1 deadline to receive government entitlements for the Shopping Center. The second deadline for GameStop to exercise its Termination Right is no later than thirty days after receiving a written notice from BDC (the "Landlord Notice"), which section 2.04 requires BDC to provide "on or before June 1, 2006." There is no indication that only one deadline will apply, trumping the other.

10

BDC's interpretation would require the court to read in the phrase "whichever comes first" at least once, as conditioning the separate deadlines for exercise of the Termination Right. California Civil Code section 1641 requires the court to "give effect to every part" of section 2.04, including the provisions of separate deadlines to exercise the termination right. Taken as a whole, "one time right" merely refers to GameStop's right to terminate in either circumstance. No language in section 2.04 indicates that the two circumstances are mutually exclusive options. Nor does BDC provide any evidence establishing a genuine dispute of material fact about the meaning of "one time right" in section 2.04. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

The parties agree BDC was "unable to deliver the Premises to Tenant on or before September 30, 2006." Thus, GameStop had a termination right under at least condition "b)." in section 2.04 of the Lease Agreement.

C. Deadline or Waiver of Right to Terminate Under Section 2.04

1. Deadline to Terminate

BDC contends GameStop, under either of the two conditions discussed above, could terminate the lease no later than "June 30th or July 1st of 2006." Opp'n at 3. To support this deadline, BDC relies on section 2.04's requirement that BDC provide written notice to GameStop: "If Landlord estimates it will be unable to deliver the Premises to Tenant on or before September 30, 2006, Landlord will provide written notice to Tenant on or before June 1, 2006, indicating its inability to deliver the Premises on September 30, 2006 ("Landlord Notice")." Lease Agreement § 2.04. Thus, if GameStop had thirty days from a Landlord Notice on June 1, 2006, to provide its own written notice of termination, the deadline for GameStop would be June 30 or July 1, 2006 at the latest.

But BDC did not provide the required notice. Because GameStop had "thirty (30) days from receipt of Landlord Notice to provide written notice to Landlord exercising its termination right with respect to b)," Lease Agreement § 2.04, GameStop's accrued termination right could not expire until BDC provided notice. BDC did not provide notice until GameStop's third email inquiry in June 2009 about the status of the new shopping center, and only then stated

11

it could not deliver until September 2010. GameStop terminated the contract the next day, and confirmed that termination on June 17, 2009.

A hypothetical exposes a flaw in BDC's argument. Assuming BDC had obtained government entitlements before June 1, 2006, then condition a.) of section 2.04 would not trigger. But if BDC learned on July 15, 2006, that it could not deliver the retail space to GameStop by September 30, 2006, then according to BDC's argument, GameStop could not possibly exercise a termination right under condition b.)—BDC's asserted deadline of June 30 or July 1 had passed. Even if BDC knew significantly before June 30 or July1 that it could not deliver the retail space by September 30, it could refuse to provide notice, as the contract requires, and permit the running out of the clock for GameStop to exercise its termination right. That result is possible under BDC's interpretation of the contract and contradicts the purpose of requiring notice to GameStop. *See Axon Sols., Inc. v. San Diego Data Processing Corp.*, No. 09-CV-2543-JM (RBB), 2010 WL 11509164, at *5-6 (S.D. Cal. Oct. 19, 2010) (rejecting plaintiff's interpretation of a contract provision referencing a "thirty (30) calendar day cure period" because it would permit an immediate notice of termination even if a deficiency was curable); c*f. Hoffman v. Lloyd*, No. C 06-2416 MHP, 2008 WL 298820, at *6 (N.D. Cal. Feb. 1, 2008), *aff'd*, 572 F.3d 999 (9th Cir. 2009) (observing problem with "literal enforcement of" settlement release because it would allow one party "to defeat [another party's] right to rescind" by taking steps "without the required notices," resulting in that party's avoiding "his obligations under [statute] by never fulfilling them at all").

The contract here is not reasonably susceptible to BDC's interpretation of section 2.04's deadline.

2. <u>Waiver of Termination Right</u>

BDC also contends GameStop waived its termination right. Opp'n at 4-5. "California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir.1991) (citing *Rheem Mfg. Co. v. United States*, 57 Cal. 2d 621, 626 (1962));

*see Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 3504897, at *2 (N.D. Cal. Sept. 7, 2010). Although waiver "is a question of fact and not of law," the "intention to commit a waiver must be clearly expressed." *Moss v. Minor Props., Inc.*, 262 Cal. App. 2d 847, 857 (1968); *DuBeck v. California Physicians' Serv.*, 234 Cal. App. 4th 1254, 1265 (2015) ("Waiver is ordinarily a question for the trier of fact; '[h]owever, where there are no disputed facts and only one reasonable inference may be drawn, the issue can be determined as a matter of law.'") (citation omitted).

BDC directs the court to no evidence that could lead a reasonable factfinder to conclude GameStop intentionally relinquished its termination right. BDC relies on a few communications between GameStop and BDC after GameStop had communicated its termination of the contract in June 2009. For instance, BDC directs the court to a July 9, 2009 email exchange between GameStop and BDC, in which GameStop states, "This lease is very old and we have an updated notice address, insurance, etc…., [sic] which will need to be amended….. [sic] We will send an amendment updating what we need." ECF No. 26-4 at 89. Another email from the same day states, "[W]e do need to update the Lease Agreement….. [sic] it was executed back in November of 2004. Legal will get comments to you shortly. We will still need to have a failure to deliver date, just in case the SWM project doesn't happen." *Id.* BDC's Stephens, in his declaration, also indicates that a Senior Vice President of GameStop, in a phone call occurring much later, on February 3, 2015, "indicated that he understood the information" about developments at the shopping center and "did not dispute that Gamestop [sic] leased a store in the Lodi Shopping Center or assert that Gamestop's [sic] lease had been terminated during the conversation." ECF No. 26-15 at 2. The language of the Stephens's declaration is fairly vague, and notable for what it does not say: Stephens does not aver anyone in the February 2015 phone call expressly discussed GameStop's termination rights or whether the lease agreement was still in effect.

No other evidence BDC offers would permit a reasonable factfinder to conclude there was an intentional relinquishment of the termination right. The termination right was not discussed in the parties' 2009 emails. At best, a reasonable factfinder could only conclude that, in

13

the context of GameStop's previous exercise and reiteration of its termination right on June 2 and June 17, 2009, later talk of updating or amending the lease meant signing a new lease entirely. No reasonable factfinder could conclude that a failure to mention the termination in phone or email conversations six years after termination qualifies as an intentional relinquishment or clear expression of a waiver of the termination right. *See Keysight Techs., Inc. v. Mentor Graphics Corp.*, No. C 17-05222 SBA, 2017 WL 7310781, at *9-10 (N.D. Cal. Sept. 28, 2017) (finding no waiver by defendant "based on the facts alleged in the pleadings . . . construed in the light most favorable to [plaintiff]" where plaintiff had argued defendant waived its right to receive written or facsimile notices by directly answering plaintiff's question by email as to whom to send "[a]ll contract documents"); *Operating Eng'rs' Pension Tr. Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 913 (N.D. Cal. 2010) (finding no waiver at summary judgment and "no triable issue of material fact" related to waiver where "no evidence" could support intentional waiver in part because "[n]o letter mentions a waiver of [party's] right to withdrawal liability"); *Bhakta v. Hartford Life & Annuity Ins. Co.*, 673 F. App'x 762, 765 (9th Cir. 2016) (affirming district court's grant of summary judgment in part because insurance company "did not waive its right to rescind" as a matter of law where "the undisputed evidence only vaguely suggest[ed] the possibility of abuse or liver disease").

These conclusions are reinforced by GameStop's unequivocal language in its 2009 termination notice: "We are exercising our right to terminate this lease, per the Landlords [sic] Failure to Deliver. This will be effective immediately and please consider this letter the notice to do so." UMF 32; ECF No. 26-10 at 2. A reasonable factfinder could only conclude, based on this evidence before the court, that GameStop clearly exercised its termination right consistent with Lease Agreement section 2.04's requirement of "written notice to Landlord exercising [Tenant's] Termination Right with respect to b). above . . . ." ECF No. 26-3 at 7; *see Axon Sols., Inc.*, 2010 WL 11509164, at *5 (finding defendants stated facts sufficient to support claim that it provided plaintiff with written notice of default despite plaintiff's argument that defendant's letter "did not on its face identify itself as a default notice or explain that [plaintiff] had thirty days to cure the alleged deficiencies"); *Roehm Distrib. Co. v. Burgermeister Brewing Corp.*,

1  196 Cal. App. 2d 678, 680, 683 (1961) (affirming grant of summary judgment to defendant where
2  defendant provided "[w]ritten notice of termination of the contract" to plaintiff consistent with
3  previous letters reciting understanding that either party might terminate contractual relationship at
4  any time).

5  GameStop exercised its termination right on June 2, 2009 within one day of
6  receiving the first communication from BDC indicating formally it could not deliver the premises
7  by September 30, 2006; under the agreement, GameStop had 30 days to terminate once formally
8  notified. *See* ECF No. 26-3 at7 (termination letter); UMF 21, 24-27 (GameStop receives an email
9  from BDC on June 1, 2009, more than a year after multiple inquiries regarding status of
10 construction, and parties agreeing Browman "did not provide Landlord Notice to GameStop in
11 accordance with Section 2.04(b)"); Lease Agreement § 2.04. GameStop properly exercised its
12 termination right, and terminated the contract.

13 California law provides, "[o]nce an option to terminate a contract is exercised, the
14 contract is extinguished and discharged; it cannot thereafter be revived by the other party through
15 an offer to perform the act, the nonperformance of which gave rise to the option to terminate."
16 *Siegel v. Lewis*, 74 Cal. App. 2d 86, 91 (1946). Even if GameStop had a change of heart upon
17 exercising termination, it also could not revive the contract after successful termination. *See*
18 *Beverly Way Assocs. v. Barham*, 226 Cal. App. 3d 49, 52-56 (1990) (holding buyer could not
19 revive contract despite communicating that buyer was "prepared to waive" objections that had
20 already terminated contract).

21 D.     Post-Termination Evidence

22 BDC relies on evidence of the parties' communications after GameStop's
23 termination to support its contention "that GameStop accepted BDC's contention that
24 GameStop's purported termination was invalid under the Lease." Opp'n at 5-6. But the court has
25 determined above that GameStop properly exercised its termination right under the terms of
26 section 2.04. Moreover, BDC points to no evidence of GameStop's affirmatively accepting
27 BDC's contention that GameStop conceded its termination was invalid or ineffective. As
28 discussed above, much of the communication BDC relies on does not discuss the termination

right, and much of that communication involves BDC's offering sites other than the site identified in the Lease Agreement.

GameStop maintains its position that it had terminated the lease in two instances, in responding to BDC's challenging the termination. First, in an email exchange on October 2, 2015, Summey stated, "We will not be proceeding… [sic] this deal is long forgotten." ECF No. 26-15 at 4. Although BDC subsequently stated "[t]here is not a mechanism for the tenant to terminate anyway," BDC presents no evidence of any direct response by GameStop to that email. Second, BDC offers a letter from GameStop dated March 3, 2016, in which GameStop maintains its position that it validly terminated the lease, a position it stated on June 2, 2009 when terminating the lease and again on June 17, 2009, when BDC disputed the validity of the termination. ECF No. 27-4 at 2.

None of BDC's evidence shows the parties intended the termination right to expire in 2006. Even if the contract were reasonably susceptible to BDC's interpretation, the evidence BDC presents contains a fatal defect: this evidence is of conduct occurring after BDC disputed GameStop's termination. California courts consider "conduct of the parties after execution of the contract and before any controversy has arisen as to its effect" as "the most reliable evidence of the parties' intentions." *Kennecott Corp. v. Union Oil Co.*, 196 Cal. App. 3d 1179, 1189 (1987). Courts have referred to this as the principle of "practical construction," and they apply it "only to acts performed under the contract before any dispute has arisen." *E.g.*, *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 296-97 (1970) (refusing to admit "negotiations" after the date on which "the parties had reached a stage of clear disagreement on the crucial question").

BDC's earliest evidence of the parties' intentions about termination is in the form of emails exchanged in June 2009. ECF No. 26-4 at 95. But a clear disagreement on the crucial question in this case had arisen by June 16, 2009, when BDC wrote in a letter dated June 16, 2009, that GameStop "had 'forfeited' its right to terminate." ECF No. 27-4 at 2. GameStop rejected BDC's assertions "and reiterated its termination of the Lease" in a letter dated June 17, 2009, undermining any suggestion of a meeting of the minds regarding expiration of the

termination right. ECF No. 27-4 at 2. BDC's evidence of conduct after the dispute had arisen is not reliable evidence of the parties' intentions at the time the Lease Agreement was signed.

### E. Promissory Estoppel

BDC claims GameStop's "post-June 2, 2009 communications also raise a question of fact as to whether BDC is entitled to relief under their theory of promissory estoppel." Opp'n at 6-7. This claim fails for two reasons.

First, BDC has not alleged promissory estoppel in its complaint or in its answer to GameStop's counterclaim. *See* Compl. ¶¶ 24-33; BDC Answer ¶ 26, ECF No. 8 (alleging only equitable estoppel as an affirmative defense, stating GameStop "failed to act promptly and reasonably . . . and is estopped from asserting the claims" in GameStop's counterclaim). The parties have conducted discovery, *see, e.g.*, ECF Nos. 15-19, 24-25, and the deadline for non-expert discovery has passed, ECF No. 22 at 2. BDC has never sought leave to amend the complaint to incorporate allegations of promissory estoppel based on completed fact discovery.

Second, even if the claim were before the court, promissory estoppel requires a "clear and unambiguous" promise to the injured party. *Alimena v. Vericrest Fin., Inc.*, 964 F. Supp. 2d 1200, 1216 (E.D. Cal. 2013) (citing *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 890-91 (1976)). In the parties' communications about alternate locations for the GameStop location, or amending the lease with new information, BDC fails to direct the court's attention to a clear and unambiguous promise that GameStop intended to perform under the same lease it had unequivocally terminated. No reasonable factfinder could review the evidence offered by BDC and find a clear and unambiguous promise by GameStop to honor the unambiguously terminated lease or even to commit to renting a retail space.

## IV. CONCLUSION

GameStop properly exercised its termination right under the integrated Lease Agreement. BDC has identified no genuine dispute of material fact, and its post-termination conduct evidence is irrelevant. Once GameStop terminated the agreement, no party could revive

/////

/////

17

the agreement through waiving the termination.  For these reasons, summary judgment is GRANTED to GameStop on all claims.

        IT IS SO ORDERED.

DATED:  August 15, 2018.

_____
UNITED STATES DISTRICT JUDGE